Benjamin Mercer *v.* Gurdon Williams *et al.*

The Legislative Council of the Territory of Michigan had power to pass acts of incorporation, which were valid until disapproved by Congress.

Where a railroad company had, in good faith, obtained an assessment of damages by a jury, on land which was necessary for their road, long before they wanted the use of it, and afterwards, when any delay would have been injurious to them, and while the confirmation of the inquisition was still pending in the Supreme Court, to which it had been reserved, had tendered the damages assessed, and proceeded to use the land, the Court, under the circumstances, refused to enjoin them from constructing the road upon it, although the inquisition was not valid until confirmed; inasmuch as they could only be delayed, and could not be prevented from finally obtaining the land.

This was an application for an injunction to restrain the defendants from constructing the Detroit and Pontiac railroad across the land of the complainant.

The company was incorporated by the Legislative Council of the Territory of Michigan, March 7th, 1834; and the road, as located, passed over two out-lots of the village of Pontiac, belonging to complainant. In 1839, the company, not being able to agree with the complainant for the right of way, had his damages assessed by a jury, under the twelfth section of their charter, and the inquisition returned to the clerk of the Circuit Court for the county of Oakland, for confirmation. The complainant opposed the confirmation of the inquisition by the Circuit Court, which reserved the question for the opinion of the Supreme Court, where the question was still pending. On November 16th, 1842, the defendants entered on the aforesaid lots of the complainant, with ploughs, and other implements for the construction of the road, and commenced digging and removing the earth, the company having pre-

viously tendered the complainant thirty dollars in silver, that being the amount at which the jury had assessed his damages.

*G. W. Wisner*, for complainant.

*O. D. Richardson*, for defendants.

THE CHANCELLOR. The injunction is asked on two grounds: *First*, that the Legislative Council of the Territory had not power to create a corporation; and, *Secondly*, that the company have no right, under their charter, to enter on the land, for the purpose of constructing their road, until they have procured a confirmation of the inquisition.

By the ordinance of 1787, for the government of the territory of the United States northwest of the river Ohio, the legislative power of the territory was vested in the Governor and Judges, until there should be five thousand free male inhabitants of full age in the district, when there was to be a general assembly or legislature, to consist of the governor, legislative council, and a house of representatives. The governor and judges, or a majority of them, were authorized to adopt and publish such laws of the original States, criminal and civil, as might be necessary, and best suited to the circumstances of the district, and report them to Congress from time to time; which laws were to be in force until the organization of the general assembly, unless disapproved of by Congress. Under this part of the ordinance it has been held by the Supreme Court of the State of New York, that the governor and judges had power to incorporate a bank. *Bank of Michigan* v. *Williams*, 5 *Wend. R.* 478. And this decision of the Supreme Court was afterwards affirmed by the Court of Errors of that State. 7 *Wend. R.* 539.

The power of the general assembly, or legislature of the territory, was intended to be more extensive than that of the governor and judges, who were limited to the adoption of laws from the original States, while the ordinance declares "the governor, legislative council, and house of representatives, shall have authority to make laws, *in all cases*, for the good government of the district, not repugnant to the principles and articles in this ordinance established and declared." Now, there is nothing in the ordinance denying to the general assembly the right to charter a bank, railroad, or other corporation; nor is there any thing in the exercise of such right repugnant to the principles or articles contained in it. It would, moreover, it seems to me, be a strange construction of the ordinance, to concede to the governor and judges, the first and lower grade of territorial government, a power denied to the last and higher grade.

The ordinance has been repeatedly altered by Congress. The general assembly mentioned in it, was never organized in Michigan. By "an act to amend the ordinance and acts of Congress for the government of the Territory of Michigan, and for other purposes," approved March 3, 1803, the same powers which were granted to the governor, legislative council, and house of representatives, by the ordinance, were conferred on the governor and legislative council mentioned in that act, which also provided that no law passed by the governor and legislative council should be valid, after it had been disapproved by Congress. This was the only limitation on the governor and legislative council, in addition to that contained in the ordinance, that they should pass no law repugnant to the principles and articles in the ordinance established and declared. By another act, approved on the 5th of February, 1825, Congress increased the number of the legisla-

tive council, and afterwards, on the 29th of January, 1827, authorized the members of the council to be elected by the people; but by neither of these acts, nor any other relating to the territory, did they impose any other or further restrictions on the powers of the legislative council; nor has Congress ever disapproved of the act incorporating the Detroit and Pontiac Railroad Company.

*Second.* Under the eleventh and twelfth sections of the act of incorporation, the company have no right to enter on complainant's land, for the purpose of constructing their road, until they have procured a confirmation of the inquisition, and made a tender of the damages. The eleventh section vests them with all the privileges, rights, and powers, necessary for the location, construction, and keeping in repair said road; but, while it prescribes no limitation to their right to enter on lands for the purpose of locating the road, it says they may enter upon, use and excavate, any land which may be wanted for the site of said railroad, &c., so soon as the amount of damages is ascertained, and tendered, as thereinafter provided. And the twelfth section provides that, where the parties cannot agree, the damages shall be assessed by a jury, who shall reduce their inquisition to writing, and that it shall then be confirmed by the Circuit Court of the county, if no sufficient cause to the contrary is shown; or, if set aside, the Court may direct another inquisition, and that such valuation, when paid or tendered to the owner, shall entitle the company to the land required, as fully as if it had been conveyed by the owner; and concludes with a proviso, that the company shall not have power to take the land of any person for the purposes of the corporation, until full payment shall have been made or tendered to such person, for all damages assessed to him, together with the costs of such inquisition or assessment. This

language is too clear and explicit to be misunderstood. The damages must not only be assessed, but the inquisition must be confirmed, before the company can obtain a right to the land by a tender.

The only remaining question is, whether an injunction should be granted under the peculiar circumstances of the case. If the Court had power to restrain the company from taking the land at all, under their charter, I would allow the injunction. But this it cannot do. The effect of the injunction would be only to arrest the construction of the road, until the company obtained a right to the land, in the manner pointed out in their charter. Even this the Court would do in an ordinary case; but there are circumstances in the present case, which, I think, take it out of the general rule, and I shall, accordingly, deny the injunction, on the ground that the company had, in good faith, instituted proceedings under their charter to take the land, long before they were in want of it for the construction of their road; that the jury assessed the complainant's damages at thirty dollars only, and that that amount had been tendered to him, and the company will sustain great damage from the delay of their work.

Injunction denied.